## The University of Illinois

*v.*

## The Globe Savings Bank *et al.*

*Opinion filed April 17, 1900—Rehearing denied June 8, 1900.*

1. Receivers—*when an assignee of securities is entitled to possession.*
Where a receiver appointed in the interest of all parties for an
insolvent bank takes possession, under an order of court, of securi-
ties belonging to the president of the bank in his own right, such
possession is merely that of an officer of the court, and, in the ab-
sence of any legal or equitable right to the property existing either
in the bank or the receiver, the right to possession of the securities
by one who has taken an assignment thereof under an order of the
court cannot be conditioned upon the refunding to the bank, for
the benefit of its creditors, of a sum of money misappropriated by
the president after the bank had closed its doors.

2. Appeals and errors—*findings of decree taken as true if evidence
is not preserved.* It is sufficient to uphold a decree in chancery that
the facts as found by the court from the evidence are recited in
the decree, and such findings must be taken as true where the evi-
dence is not preserved in the record.

3. Same—*one desiring to challenge findings of decree should preserve
the evidence.* A party desiring to challenge the finding of a decree
as to the existence of an adverse lien upon property claimed by
him should preserve the evidence upon that point in the record.

Appeal from the Circuit Court of Cook county; the
Hon. Murray F. Tuley, Judge, presiding.

On and prior to April 3, 1897, Charles W. Spalding
was president, principal stockholder and manager of the
Globe Savings Bank, doing business in the city of Chi-
cago. He was at the same time treasurer of the Univer-
sity of Illinois. On that day the bank closed its doors
and Spalding left the State. On the fifth of the same
month this litigation was begun in the circuit court of
Cook county, by the cashier of the bank, George E.
Churchill, filing a bill to settle its business and wind up
the corporation. On the filing of that bill the Chicago
Title and Trust Company was appointed receiver of the
bank, and the latter's officers were ordered to turn over

to such receiver all its property. On April 8 an order was entered restraining Spalding from interfering with or opening certain safety deposit boxes in the Globe safety deposit vaults under the bank, to which he alone had access, and from assigning or transferring the contents thereof, until the further order of the court. On April 10 the receiver was ordered to open the safety deposit boxes and take possession of the contents "appearing to belong to the bank." On the 13th the order was so modified as to permit the University of Illinois to take any conveyance from Spalding, by way of security or otherwise, of any property which the bank did not own or have an interest in, but without prejudice to any rights the bank or its receiver might have by reason of the bill and amendments thereto. On the last named date the receiver reported to the court that upon opening said boxes it found therein and took possession of certain bonds known in the records as "endowment bonds," and also sixteen bonds of the town of Buckley, State of Washington, dated July 1, 1892, Nos. 4 to 19, both inclusive; seventeen bonds, of $1000 each, of the Marshalltown Light, Power and Railway Company, Nos. 11 to 17, inclusive, 27, 28, and 63 to 70, both inclusive; fifty-five bonds of the Idaho Canal Company, Nos. 79, 80, 95 to 100, both inclusive, 115 to 124, both inclusive, 237 to 248, both inclusive, and 250 to 274, both inclusive; twenty-three hundred and ninety shares of stock of the Idaho Canal Company, par value $100 per share; fifty bonds, of $1000 each, of the Pocatello Power and Irrigation Company.

On April 14 Spalding conveyed and assigned by deed to the university the bonds so reported, as security for an indebtedness by him to it. On the 19th the university filed two intervening petitions, by the first claiming the above mentioned "endowment bonds." By the second petition it was alleged that at the filing of the bill and the appointment of the receiver, and on April 14, 1897, (the date of the assignment,) Spalding was the owner of all

the securities taken by the receiver from the safety deposit boxes described in the petition, including the above named Buckley, Marshalltown and Idaho Canal Company bonds, and claimed the same under and by virtue of the conveyance to it by Spalding.

On the 24th of May, following, the Attorney General filed a bill on behalf of the State to settle the affairs of the bank and for the appointment of a receiver, and subsequently that suit and the one begun by Churchill were consolidated, the Chicago Title and Trust Company being again appointed receiver. On the hearing the court found, among other things, the following:

"The court having considered the two intervening petitions of the University of Illinois, filed herein April 19, 1897, and the issues made thereon and the evidence therein, and the rights and interests of said university and of its trustees, * * * finds as follows with reference to the rights, interests and obligations of the said University of Illinois in, about and concerning all and singular the property claimed by it, described in any of the pleadings herein and in its several petitions, and all matters and things included in this litigation in which the said university and said State officers, acting as aforesaid, are concerned. * * * The court further finds that at the time of the commencement of this suit and at the time of the appointment of the receiver herein the said Charles W. Spalding was the owner of certain bonds, stocks and other securities hereinafter specifically described, and that the same were in the private boxes of the said Charles W. Spalding at said time and in his exclusive and personal possession; that on April 14, 1897, the said Charles W. Spalding, by an instrument duly executed for that purpose, purported to convey, assign and transfer * * * to the said University of Illinois all the said bonds, stocks and securities, the same being specifically described therein, as follows: [Here follows a description of the bonds, etc., taken from said boxes, including

the Buckley, Marshalltown, Idaho canal and other bonds and stocks as above.]

"The court finds that by the assignment and transfer the said University of Illinois became the owner, for all the uses and purposes in the said instrument stated, of all and singular the said bonds, stocks and other securities mentioned and so transferred, but subject to the equities of the other creditors of said bank to have the said $15,000, hereinafter referred to as having been taken by the said Spalding from the moneys of said bank after its failure, returned to said bank or its receiver, which was appointed by this court prior to its transfer to the said University of Illinois, and that neither the said Globe Savings Bank, nor its said receiver, nor its creditors or depositors, had then, nor now have, any right, title or interest therein or any lien or charge thereon, with the exception following: Finds that three of said bonds of Pocatello Power and Irrigation Company had been in the possession of the said Globe Savings Bank as security for the note of E. H. Tillson, and that the said Globe Savings Bank had a lien or charge upon said three bonds for the payment of said Tillson note, but that after the closing of said bank and after the appointment of the receiver herein the same had been fraudulently taken out of the possession of the said Globe Savings Bank by Spalding and placed in his private box, and that the bank and its receiver were entitled to the possession of said three bonds; directs the receiver to sell the said three bonds for the payment of said Tillson note and apply the net proceeds thereof to the payment of said note, the balance, if any, to belong to the University of Illinois; finds that five bonds of the Idaho Canal Company, for $1000 each, are held by the receiver as security for a note of Frank W. Smith for $5000; directs the receiver to sell said five bonds of the Idaho Canal Company at public sale and apply the proceeds of said sale to the payment of said note, the balance, if any, to be paid to

the university; finds that fifty-five Idaho Canal Company bonds, numbered 79, 80, 95 to 100, both inclusive, 115 to 124, inclusive, 237 to 248, inclusive, and 250 to 274, both inclusive, which were, as above herein found and determined, in the private box of said Spalding and in his possession when the receiver herein was appointed, were part of an issue of three hundred bonds of like amount, date and tenor, secured by a trust deed of said company," setting forth the facts, showing the re-issue of bonds by the company, and stating: "That on the application for entry of this decree counsel for the University of Illinois, on behalf of said university and of the State officers authorized by law to receive the proceeds of this litigation, disclaimed any desire to claim or receive any of the Idaho canal bonds of said first issue, or any other bonds of said company except the specified fifty-five bonds so assigned to said university by said Spalding and numbered as aforesaid, and found by said receiver in the said Spalding's private box as aforesaid; * * * finds that at the time of the closing of said bank the said Spalding fled from the city of Chicago and concealed himself at the Calumet club grounds, in the State of Indiana.

"And the court further finds that at the time the said Globe Savings Bank was closed, on the 3d day of April, 1897, its available cash was reduced to about $30,000, and was known by said Spalding to be unable to resume business and to be insolvent, but said Spalding wrongfully and fraudulently appropriated $15,000 out of the cash funds of said bank, and afterwards used upwards of $7000 thereof in payment of debts and dues of the funds of the University of Illinois, and that such appropriation of the funds of said bank by said Spalding was a fraud upon the rights of other creditors of said bank, and that said Spalding cannot in equity demand the return of said bonds without first doing equity by restoring said sum of $15,000 so wrongfully appropriated by him, and said uni-

versity has no greater rights under or by virtue of the bill of sale or assignment from said Spalding.

"And the court further finds that said Globe Savings Bank had and has an equitable lien upon said fifty-five bonds of the Idaho Canal Company to enforce the payment to the receiver herein of said sum of $15,000. And it appearing to the court that the said fifty-five Idaho canal bonds now in the hands of said receiver in lieu of the ninety Idaho canal bonds so delivered by said Spalding to said Churchill, and by the latter to the receiver, as aforesaid, are insufficient, in case of the sale thereof, (if a sale be made as hereinbefore ordered,) to re-pay to said receiver the said $15,000 so fraudulently taken from the said assets of said bank after said failure; and that in equity and good conscience said University of Illinois should make good to said receiver said $15,000, or any deficiency, if any, that may arise from the sale of said fifty-five Idaho canal bonds, and that the said twenty-three hundred and ninety shares of stock of said Idaho Canal Company in the hands of said receiver which were taken possession of by said receiver from the private box of said Spalding, and said seventeen bonds of the Marshalltown Light, Power and Railway Company, and said sixteen bonds of the town of Buckley, which belonged to said Spalding prior to his transfer of the same to said University of Illinois on the 14th day of April, 1897, are sufficient, if sold, to reimburse said receiver for the said $15,000 so taken by said Spalding, or to supply any deficiency thereof which may arise if said fifty-five Idaho canal bonds be sold as aforesaid:

"It is ordered, unless the said university, or some person in its behalf, shall, on or before any such sale of said fifty-five Idaho canal bonds be made, pay to the said receiver said $15,000, with interest from the date of this decree, or shall, within five days after such sale, pay any deficiency there may be found from the sale not sufficing to pay said sum of $15,000 and interest, that said receiver

proceed to sell the said twenty-three hundred and ninety shares of Idaho canal stock and such Marshalltown and town of Buckley bonds at public sale, after five days' public notice in a newspaper published in said city of Chicago, and apply the proceeds of said sale, after paying the expenses of said sale, to the extinguishment of said equitable claim for the return of said $15,000 and interest, and pay the remainder, if any, over to said University of Illinois, or its solicitors, and that he retain possession of the said twenty-three hundred and ninety shares of stock and said Marshalltown and town of Buckley bonds until said $15,000 so taken by Spalding, with interest thereon, is paid, as aforesaid.

"It is therefore ordered, adjudged and decreed that unless the said Charles W. Spalding, the University of Illinois, or some other person, shall pay to the receiver herein the said sum of $15,000 within ninety days from the entry thereof, the receiver herein sell said fifty-five bonds of the Idaho Canal Company at public sale, or so many thereof as may be necessary to pay said $15,000 and costs of sale, and that said receiver apply the proceeds of sale to the payment of said sum of $15,000 and costs of sale, and deliver the balance, if any, of the said bonds so remaining unsold, to the University of Illinois or its solicitors. And it is further ordered that the said receiver be permitted to bid at the sale of any of the above described property such sum or sums as it may deem the same reasonably worth; and the court hereby reserves, until after the receipt by the receiver of said $15,000 and interest, by sale or otherwise, all questions as to what credit or dividend on account thereof, if any, any party in interest may be entitled to. It is further ordered, adjudged and decreed that the receiver herein and the clerk of this court deliver to the Governor, Auditor and Treasurer of the State of Illinois, on behalf of the State of Illinois, or to Wilson, Moore & McIlvaine, solicitors herein for the University of Illinois, on their

behalf, all and singular the said bonds, stocks, notes and other securities assigned by the said Spalding to the said university as above herein specifically mentioned, that is to say: Fifty-five Idaho Canal Company bonds, (new issue,) etc., giving their numbers and amounts; twenty-three hundred and ninety shares of stock of said company, par value $100 each; sixteen bonds of the town of Buckley; seventeen bonds of the Marshalltown Light and Power Company, upon the payment of said sum of $15,000 upon said dividend to said receiver in discharge of the said equitable lien, and in default thereof that he sell the same and apply the proceeds as hereinbefore directed." Then follows a description of all other bonds and securities, mentioned in the second petition, found in said boxes, as reported by the receiver.

By an amendment and supplement to the original bill the bank claimed an interest of Spalding in what is called "Ford's subdivision" of certain real estate, on the ground that it had been paid for out of the bank funds. This claim was resisted by the university.

The court found in its decree that although certain sums of money were taken by Spalding from the bank and used in making payment for the lands, the same, prior to the failure of the bank, had been repaid in cash from moneys of Spalding derived from his individual resources, and accordingly decreed in favor of the university on that issue.

Many other questions were involved in the action below and decided, but the foregoing is deemed sufficient for an understanding of the questions raised on this appeal.

E. C. AKIN, Attorney General, (WILSON, MOORE & MCILVAINE, of counsel,) for appellant.

JOHN W. SMITH, for appellee the Globe Savings Bank.

HENRY W. MAGEE, and MAX PAM, for appellee the Chicago Title and Trust Company, Receiver.

Mr. JUSTICE WILKIN delivered the opinion of the court:

From the decree of the circuit court the University of Illinois alone prayed and was allowed an appeal, and by its assignment of errors questions only the order requiring it to pay the bank, or receiver, the $15,000 wrongfully appropriated by Spalding, as a condition precedent to its receiving the above mentioned bonds and stocks. Appellees assigned cross-errors upon the record, by which they seek to question the ruling of the court below upon the first intervening petition by the university, in holding the university entitled to the bonds, securities, etc., claimed by the second petition, subject only to the lien for $15,000, and in refusing to sustain the bank's claim to the Ford subdivision interest. Notwithstanding these assignments of cross-errors, counsel have filed no abstract whatever of those parts of the record upon which they are based, and no certificate of the evidence or bill of exceptions has been filed by either party. We have, however, looked into the record,—especially the portions of the decree omitted from the abstract filed by appellant,—sufficiently to find that on the facts found none of the cross-errors are well assigned.

Going to the merits of all the claims made by the University of Illinois, it is said by counsel for the receiver, though not seriously insisted upon, that by an act of the legislature approved June 11, 1897, all its rights of action for such claims became vested in the State officers, and therefore it could not maintain the suit. The question is raised by neither of the assignments of cross-errors, and if it were, the contention is wholly without merit. The petitions of the university were pending when the act was passed, having been filed April 19 prior thereto, and issues joined thereon, and the statute does not purport to take away its right to prosecute the action, but clearly recognizes the then pending litigation and the right of the university to prosecute the same.

As to the Ford subdivision interest, the transaction, as found by the court, amounted to no more than a borrowing of money from the bank to invest in lands and re-paying the loan. Had Spalding failed to return the money, the bank, by tracing it into the land, might have enforced its claim against it, but no such case can be made out of the facts recited in the decree. The decree was in accordance with the facts found.

As to the bonds described in the first petition, the finding is that they were the property of the university, and in its possession, by its treasurer, at the bringing of the suit and when taken from the safety deposit boxes. As to those claimed by the second petition, except as to those specifically named, the finding is equally clear and explicit that Spalding was the absolute owner, his title being unaffected by any lien in favor of the bank when taken possession of by the receiver. As we understand counsel for appellees, their contention is, that although all these bonds were the property of the university, and of Spalding when he conveyed, the bank had some sort of an equitable lien upon them for the satisfaction of its creditors, and that before the university could claim them it should be required in equity to discharge such lien. No legal or equitable right to the property existing either in the bank or receiver at the time it was seized, the question must be, did the act of taking possession thereof under the order of the court give a specific lien in the bank's favor? As the facts are found the order of the court did not authorize the receiver to take the securities out of the boxes. It was ordered to take from them only such as appeared to belong to the bank, and when it took those owned by the university, and by Spalding in his individual right, its possession was clearly unauthorized and wrongful. But if they had been seized in strict obedience to that order the rights and interests of the parties therein would not have been changed. When it took them it simply had possession, as the officer of the court,

for the owners of the property from whose possession they were taken. It was appointed receiver, not for the bank alone, but on behalf of all parties. interested. It could not deprive the university or Spalding of its or his right to the property seized or to the possession thereof, but could only hold it for them if they succeeded in establishing their ownership. (*Coates* v. *Cunningham*, 80 Ill. 467.) While the receiver so held them for the court and the benefit of those who should ultimately appear to be entitled thereto, the order of the 13th of April, permitting the university to take any conveyance from Spalding, by way of security or otherwise, as above stated, was entered, and in pursuance of that order the assignment under which the university claimed, in its second petition, was made. There is no feature of an equitable attachment in the case. The seizing of the bonds, stocks, securities, etc., in question, was the usual taking possession of property by a receiver under an order of the court, to be held pending the determination of the title thereto.

On the facts found, the decree of the circuit court as to the endowment bonds, and all the securities claimed by the second petition, except the three Pocatello Power and Irrigation Company bonds, the Idaho Canal Company bonds, the twenty-three hundred and ninety shares of stock of the same company, the seventeen bonds of the Marshalltown Light, Power and Railway Company and the sixteen bonds of the town of Buckley, was clearly right. Each of the cross-errors will accordingly be overruled.

As already stated, the errors specified by the appellant go only to those parts of the decree which give the bank a lien upon the fifty-five Idaho Canal Company bonds, the twenty-three hundred and ninety shares of stock in that company, the seventeen Marshalltown bonds and the sixteen town of Buckley bonds. As to all of these securities except the fifty-five Idaho Canal Company bonds no finding can be observed in the decree of

any lien in favor of the bank. But however that may be, from what has been said as to the other bonds, stocks and securities described in the second petition, the decree erroneously gave the bank a lien upon them.

As to the Idaho canal bonds, the finding is that five were held by the receiver as security for a note of Frank W. Smith for $5000, and the decree directs him to sell them and apply the proceeds in payment of that note, the balance, if any, to be paid to the university. The correctness of that finding and order does not seem to be questioned by the appellant. There were therefore only fifty of those bonds remaining to be disposed of, but the subsequent finding and order speaks of the whole number fifty-five. As to these the decree recites: "And the court finds that said Globe Savings Bank had and has an equitable lien upon said fifty-five bonds of the Idaho Canal Company to enforce the payment to the receiver of said sum of $15,000." It is sufficient to uphold a decree in chancery that the facts as found by the court from the evidence are recited in the decree, and such finding must be taken as true when the evidence has not been preserved in the record. (*Atkinson* v. *Linden Steel Co.* 138 Ill. 192; *Davis* v. *Christian Union,* 100 id. 313; *Knickerbocker* v. *McKindley Coal Co.* 172 id. 535; *Schuler* v. *Hogan,* 168 id. 369.) Under the foregoing finding, in the absence of the evidence, we see no reason for disturbing the decree of the circuit court as to the Idaho canal bonds. If the university desired to challenge the finding of the court as to the existence of an equitable lien against those bonds on the facts, it should have preserved the evidence in the record.

In so far as the decree below gives the bank a lien on the Idaho Canal Company stock, the seventeen Marshalltown bonds and the sixteen bonds of the town of Buckley it will be reversed, but in so far as it gives to the said bank a lien upon the Idaho Canal Company bonds it will be affirmed. It should, however, give a first lien for the $15,000 upon but fifty of those bonds. The cause will be

remanded to the circuit court, with directions to modify its decree as herein indicated and carry the same into effect, each party being required to pay one-half of the costs in this court.

*Decree reversed in part.*